UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW L.,[1] | ) |
|           Plaintiff, | ) No. 23 CV 1145 |
| v. | ) Magistrate Judge Young B. Kim |
| FRANK BISIGNANO, Commissioner of Social Security, | ) |
|           Defendant. | ) January 7, 2026 |

**MEMORANDUM OPINION and ORDER**

Andrew L. seeks disability benefits asserting that he is disabled by autism spectrum disorder and anxiety. This court previously remanded the Commissioner of Social Security's decision denying Andrew benefits. *See Andrew L. v. Kijakazi*, No. 20 CV 1609, 2021 WL 5447035 (N.D. Ill. Nov. 22, 2021). He brings this second appeal seeking judicial review of the Commissioner's decision again denying him benefits. For the following reasons, Andrew's remand request is granted:

**Procedural History**

Andrew filed an application for disability insurance benefits in August 2017 alleging that he has been disabled since May 1, 2009, when he was nine years old. (Administrative Record ("A.R.") 17, 110, 186, 193, 344.) Andrew then filed an application for supplemental security income in February 2020, alleging the same disability onset date. (Id. at 1077-90, 1373.) Andrew later amended the onset date

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Andrew's first name and last initial to protect his privacy to the extent possible.

for both applications from May 1, 2009, to October 11, 2017. (Id. at 675.) After a November 2018 administrative hearing, at which Andrew appeared along with his mother, his attorney, and a vocational expert ("VE"), (id. at 31-91), the administrative law judge ("ALJ") concluded in February 2019 that Andrew is not disabled, (id. at 17-26). Thereafter, Andrew filed a lawsuit seeking judicial review, and this court remanded the case for further administrative proceedings. *See Andrew L.*, 2021 WL 5447035, at *1; (A.R. 769-81).

On remand, the Appeals Council noted that Andrew filed subsequent disability benefit applications and consolidated his claims. (A.R. 784-88; see also R. 14, Pl.'s Br. at 3.) Andrew (represented by an attorney), his mother, and a VE testified at an August 2022 administrative hearing, (id. at 698-741), but the ALJ again denied benefits that November, (id. at 675-89). Andrew subsequently filed this second appeal, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 7).

## Analysis

Andrew asserts that the ALJ erred by not accounting for his social interaction limitations.[2] (R. 14, Pl.'s Br. at 7-15.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510

---

[2] Andrew also lodges a singular complaint against the ALJ's subjective symptom assessment—that the ALJ improperly equated his ability to attend school and work with accommodations with his ability to sustain full-time, competitive work. (R. 14, Pl.'s Br. at 14-16.) Because this complaint is inextricably intertwined with his social interaction limitations, the court addresses it in that context.

2

(7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court[ ] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). Viewing the record under this standard, remand is warranted here.

Andrew argues that the ALJ erroneously fixated on "select portions of a single academic report" to support his decision while rejecting reports from "every counselor, teacher, doctor, and vocational counselor of record" who "consistently opined [that Andrew] would have additional limitations in his ability to interact with others." (R. 14, Pl.'s Br. at 2.) When assessing the severity of a medically determinable mental impairment, the ALJ examines the claimant's limitations across four broad functional areas referred to as the "paragraph B criteria." 20 C.F.R. § 404.1520a. But even if the ALJ concludes that an impairment is not severe, he still must consider the combined effects of that and all other medically determinable impairments when

3

proceeding through the disability analysis and assessing the claimant's residual functioning capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), 404.1523(c).

The ALJ here determined that Andrew's autism spectrum disorder qualifies as a severe impairment.[3] (A.R. 677.) He then assessed Andrew with moderate limitations in all four paragraph B criteria. (Id. at 678-79.) In the functional area of interacting with others, the ALJ acknowledged that Andrew lives at home and when in school he received special education services, including in "speech/language, communication, social work and transition services." (Id. at 678, 682.) Yet the ALJ noted that—with accommodations—Andrew was able to take the bus to school, volunteer a few hours a week at a zoo, and attend the STEPS vocational training program, College of DuPage classes, and a "two-week overnight college preparation program." (Id. at 678.) The ALJ further noted that a report from special education teacher John Van Overloake indicated on a checkbox form that Andrew has "no more than slight limitation in the [] domains of functioning," which the ALJ found was "generally supported by the record." (Id. at 684.)

When assessing Andrew's mental RFC, the ALJ found in relevant part that Andrew can "tolerate occasional interactions with supervisors and coworkers" but cannot "interact[] with the general public." (Id. at 679 (also finding that Andrew can

---

[3] At step two the ALJ did not mention Andrew's anxiety or discuss whether it constituted a severe or medically determinable impairment even though Andrew participated in psychotherapy for anxiety symptoms beginning in September 2016 and took anxiety medication. (See generally A.R. 675-89.) Later in his decision, however, the ALJ acknowledged Andrew's and his mother's reports of his anxiety, along with Dr. Huma Abbas's diagnosis of generalized anxiety disorder and medication prescribed to treat the same. (Id. at 678, 680-82, 685-86.)

4

make "simple work-related decisions," "deal with occasional changes in a routine work setting," and "tolerate end of day [production] quotas").) A claimant's RFC is the level of tasks he or she can perform given their limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ must incorporate a claimant's severe and non-severe limitations into the RFC and may not dismiss a line of evidence that is contrary to the ruling. *Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). Moreover, the ALJ must "say enough to enable review of whether [he] considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and his conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

Andrew asserts that the ALJ erred when finding he could have "occasional interactions with supervisors and coworkers." (R. 14, Pl.'s Br. at 9-14; R. 19, Pl.'s Reply at 3-10.) For starters, Andrew contends that the ALJ improperly dismissed a line of evidence that conflicted with his ruling. (See id.); *see also Bruno*, 817 Fed. Appx. at 242. Specifically, Andrew says the ALJ relied on Overloake's checkbox form indicating that Andrew is only slightly limited in all functional areas without addressing narrative summaries in the same document detailing the extent of Andrew's social interaction limitations. (See 14, Pl.'s Br. at 9-10 (citing A.R. 400-07, 684).) In those summaries, Overloake reports that: Andrew "can struggle to understand, appreciate, and accept opposing viewpoints"; his "tone of voice can become annoyed at times, especially if he sees his point of view being more logical

5

[and] correct than same age peers"; his "dry [and] monotone sense of humor can be confusing for his peers, as many of them, including staff, find it challenging to tell if he is serious or joking"; he has a "tendency to lose patience with peers [and] staff"; he "does not engage with his peers"; he "struggles with tone when he is frustrated and/or annoyed"; and he "take[s] it out on the teacher with defensive tone when he does not want assistance." (A.R. 401-05.) Andrew correctly points out that the ALJ made no attempt to reconcile these comments with the checkbox findings on which he relies. (See id. at 679, 684); *see also Bruno*, 817 Fed. Appx. at 242.

Andrew argues next that the ALJ failed to grapple with the "actual nature" of his impairments. (See R. 19, Pl.'s Reply at 10.) For instance, Andrew underwent spoken language and speech production testing in October 1999 that revealed "a language disorder characterized by deficits in social communication" severe enough to "negatively impact[ his] effective communication in social and everyday activities." (R. 14, Pl.'s Br. at 3, 11 (citing A.R. 462).) Because of his difficulty communicating with others, Andrew received accommodations in school and in the STEPS vocational training program. (See, e.g., id. at 4-5 (citing A.R. 340 (November 2018 letter from STEPS specialist Sharon Alifantis-Kickel noting the instructive, supervised nature of STEPS, including "frequent cues and support" provided to Andrew to assist with communication skills and social interactions), 1118-20, 1122, 1124 (July 2022 questionnaire from College of DuPage academic advisor and teacher Dr. Michael Duggan describing Andrew as "a typical high-functioning autistic student" but noting he still required job coaching based on "obvious problem[s]" with understanding and

6

participating in class discussions, providing organized oral explanations, expressing anger appropriately, interpreting non-verbal cues, handling frustration, being patient, and generally engaging in social interactions, along with "serious problem[s]" responding appropriately to changes in his own mood and using coping skills to manage daily demands), 1560-61 (September 2020 statement from case manager Sheri Baumgartner noting that Andrew's "autism affects him profoundly in the area of social awareness and communication" such that he "requires support to recognize his own voice [and] language and how others are perceiving him").)

The court agrees with Andrew that although the ALJ acknowledged the "accommodated nature of [Andrew's] education and work history," he did not explain how he accounted for such accommodations in Andrew's RFC. (See id. at 683; R. 19, Pl.'s Reply at 3.) Nor did the ALJ explain how Andrew participating in STEPS, which Alifantis-Kickel described as a sheltered work environment, (A.R. 340 (explaining that through the STEPS program, Andrew received work training for 1.5 to 2 hours twice a week to practice "expected work behaviors, routines, and general job keeping skills, all with direct staff support")), or attending a Pathways program for autistic students at Aurora University, (id. at 680, 683 (indicating that Andrew received check-ins, reminders, and other accommodations through the program)), while receiving accommodations shows he can sustain full-time, competitive work. As a result, the ALJ failed to provide a "logical bridge" between the evidence and the assessed RFC. *Butler*, 4 F.4th at 501.

7

Andrew also contends that most of the evidence shows he would have difficulty occasionally interacting with coworkers and supervisors. (R. 14, Pl.'s Br. at 10-12.) To the extent Andrew asks the court to reweigh evidence or substitute its judgment for the ALJ's, it cannot do so. *Deborah M.*, 994 F.3d at 788. That said, Andrew casts sufficient doubt on whether the ALJ considered the totality of Andrew's social interaction limitations. *See Lothridge*, 984 F.3d at 1233. For example, at the reconsideration level of the administrative proceedings, the state agency psychologist opined that Andrew is moderately limited in his abilities to "interact appropriately with the general public" and "accept instructions and respond appropriately to criticism from supervisors." (A.R. 833.) Because Andrew "has problems in the social domain," the state agency psychologist opined that Andrew should have "no contact with the public and *minimal* contact with supervisors and coworkers." (Id. (emphasis added).) This expert opinion conflicts with the ALJ's assessment that Andrew could have "occasional" interactions with supervisors and coworkers. (Compare id., with id. at 679.) And while the ALJ discounted the state agency psychologist's opinion, deeming it to be of "limited persuasive value" because greater restrictions were not warranted, (id. at 684), he neglected to explain why the "minimal contact" opinion is inconsistent with or not supported by the record, as required by 20 C.F.R. § 404.1520c. (See A.R. 684; R. 19, Pl.'s Reply at 7.)

The ALJ also made no effort to address the consistency of the state agency psychologist's "minimal contact" opinion and STEPS vocational coordinator Alifantis-Kickel's November 2018 statement noting Andrew's difficulties with "verbal and non-

8

verbal communication and social interactions." (A.R. 340.) Specifically, Alifantis-Kickel opined that despite "working on 'being less blunt/aggressive,' 'accepting . . . constructive criticism,' and 'maintaining positive relationships'" in STEPS, Andrew's "recurring patterns" of behavior would "significantly impact his ability [to] gain and maintain employment." (Id.) This opinion may or may not be consistent with the state agency psychologist's opinion, (see id. at 833), but the court agrees with Andrew that because the ALJ "did not analyze *any* factor found in 20 C.F.R. § 404.1520c," (R. 19, Pl.'s Reply at 7 (emphasis in original)), it cannot meaningfully review the ALJ's decision on this issue.

Considering these deficiencies together, this court must find that the ALJ's assessed social interaction limitations in the RFC lack the weight of substantial evidence. And given the VE's testimony that a hypothetical person with Andrew's RFC must be able to "accept and respond appropriately to criticism from supervisors," (see A.R. 738-39), the court cannot say that the ALJ's errors cited here are harmless. Remand is therefore required.

## Conclusion

For the foregoing reasons, Andrew's motion is granted to the extent that the matter is remanded for further proceedings.

ENTER:

*Young B. Kim*
**Young B. Kim**
**United States Magistrate Judge**

9